IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:14-CV-1747-D |
| VS. | § § | |
| CHARLES COUCH, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this civil enforcement action brought by plaintiff Securities and Exchange Commission ("SEC") against defendants Charles Couch ("Couch") and Couch Oil & Gas, Inc. ("COG") for securities fraud, defendants move to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(6), 9(b), and 65(d), presenting issues of subject matter jurisdiction and whether the SEC has adequately pleaded federal-law claims on which relief can be granted. For the reasons that follow, the court denies defendants' motion.

I

COG is a Texas corporation engaged in the business of selling fractional, undivided working interests in oil and gas wells.[1] Couch is COG's owner, principal, and control

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the SEC, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in its favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

person, and serves as COG's director, president, and CEO.  Between September 2010 and January 2012, defendants offered investors the opportunity to purchase undivided working interests in two drilling programs: the 59 Well Program, and the Radial Nine Program.

Investments in the 59 Well Program were first offered to investors in the fall of 2010. According to the complaint, defendants represented to prospective investors that, for an investment of $99,000, they would receive a 1% working interest in 59 turnkey oil and gas wells located within "proven undeveloped productive oil zones" in West Texas.  Compl. ¶¶ 10-11.  To fund the project, defendants planned to raise $4,995,000 from investors, and represented that they would provide the remaining $4,995,000 needed for the program through funding and/or labor.  Defendants ceased offering investments in the 59 Well Program in the spring of 2011, after raising approximately $7 million from 139 investors.

Investments in the Radial Nine Program were first offered to investors in the summer of 2011.  Defendants represented that $10 million was needed to fully fund the program, and they planned to raise $7.5 million of that total from investors.  For a payment of $100,000, an investor could purchase a 1% working interest in nine new, turnkey, horizontal wells located within "proven undeveloped productive oil zones" in West Texas.  Defendants told investors that these wells would be drilled using "radial jet drilling technology," which would purportedly enhance the ability to extract oil and gas from the wells.

The SEC alleges that Couch decided to wind down the offering for the Radial Nine Program early after meeting with the SEC in October 2011 regarding the SEC's underlying investigation of defendants.  But defendants continued to receive investments for the Radial

Nine Program until late January 2012, and they allegedly encouraged investors to invest soon, selling another $2.35 million in interests in the Radial Nine Program. The SEC alleges that defendants never disclosed to investors in the Radial Nine Program the true basis for their decision to close the program early, and the offering materials and projections were never revised to reflect the early closing of the program.

To inform prospective investors about the programs, defendants created brochures and subscription agreements ("the Offering Documents") describing the programs. Defendants also created private placement memoranda ("PPMs") detailing the programs. The SEC alleges that, for both the 59 Well Program and the Radial Nine Program, defendants made a number of misrepresentations in the Offering Documents and PPMs to induce potential investors to invest in the programs, including: promising to transfer title for working interests to investors, thereby misrepresenting the nature of the investments; misrepresenting the way investor proceeds would be used to operate the programs; with respect to the Radial Nine Program, misrepresenting defendants' experience and past success with radial jet drilling technology; stating recklessly inflated numbers for estimated production and investment returns from the wells; and, as previously discussed, misrepresenting the basis for defendants' decision to wind down the Radial Nine Program early.

The SEC alleges that, in making these misrepresentations, defendants violated § 17(a) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77q; § 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b); and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Defendants move to dismiss under

Rule 12(b)(1) for failure to establish federal question jurisdiction, and to dismiss under Rules 12(b)(6) and 9(b) for failure to plead a plausible claim for relief. Defendants also move to dismiss the SEC's request for injunctive relief under Rule 65(d).

II

The court turns first to defendants' Rule 12(b)(1) motion to dismiss.[2]

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes

---

[2]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "[I]f 'the defendant[s] support[] [their] motion with affidavits, testimony or other evidentiary materials, then the attack is "factual" and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence.'" *U.S. ex rel. Coppock v. Northrop Grumman Corp.*, 2002 WL 1796979, at *5 (N.D. Tex. Aug. 1, 2002) (Fitzwater, J.) (quoting *Daniels v. Church of the Living Word #4*, 2001 WL 1445407, at *1 (N.D. Tex. Nov. 14, 2001) (Fitzwater, J., adopting opinion by Stickney, J.))

B

The SEC predicates subject matter jurisdiction on §§ 20(b) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77v(a), and §§ 21 and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78aa. Defendants contend that the court lacks subject matter jurisdiction to the extent the SEC's claims are based on statements contained in the PPMs, because the PPMs demonstrate that the investors are merely participants in joint ventures, which are not "securities" as defined by the Securities Act or the Exchange Act.

> Where . . . defendant[s'] challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.

*Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 1981). The question posed by defendants in their 12(b)(1) motion—whether the interests described by the PPMs are interests in a joint venture or are securities within the scope of the Securities Act and the Exchange Act—is a question that "reaches the merits of the [SEC's] case[.]" *Id.* at 416 (holding that question whether certain joint venture interests and promissory notes were "securities" within meaning of Securities Act or Exchange Act "reache[d] the merits of the plaintiffs' case" and thus should be treated as direct attack on merits of case—not jurisdictional attack). "[I]f the joint venture interests . . . are not securities, there is not only no federal jurisdiction to hear the case but also no federal cause of action on the stated facts." *Id*.

The SEC's assertion that the investment interests that defendants sold to investors are securities covered by the Securities Act and the Exchange Act is not so immaterial or insubstantial as to support dismissal for lack of subject matter jurisdiction. A determination that the interests that defendants sold were interests in a joint venture would support not only the conclusion that there is no subject matter jurisdiction but that there is no federal cause of action on the asserted facts. Therefore, the court will consider defendants' challenge to the court's subject matter jurisdiction as a challenge made under Rule 12(b)(6) attacking the merits of the SEC's claim.

Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is therefore denied.

III

The court now turns to defendants' motion to dismiss based on Rules 9(b) and 12(b)(6).

A

Because this an SEC civil enforcement action, the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") are inapplicable. *See, e.g., SEC v. Kornman*, 391 F.Supp.2d 477, 494 (N.D. Tex. 2005) (Lindsay, J.).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under Rule 9(b), a complaint alleging fraud must specify the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). A plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997)). In other words, the requirements are analogous to the first paragraph of a newspaper story, "namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This

Rule should be applied "with force, without apology." *Williams*, 112 F.3d at 178. "[T]he particularity demanded by Rule 9(b) differs with the facts of each case[.]" *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)); *see Williams*, 112 F.3d at 178 (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific").

Rule 9(b) is not intended, however, "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.). It serves neither "as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly repetitive pleading." *Id.* (citing *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F.Supp. 227, 251 (W.D. Tex. 1979) (Higginbothom, J.)). Rule 9(b) must be "'read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990) (some internal quotation marks omitted)). Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings. *Williams*, 112 F.3d at 178. As this court has said in non-PSLRA cases:

> [t]he court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs. The complaint must be sufficiently particular to show that the plaintiff is not seeking a license to go fishing for indicia of fraud.

*FDIC v. Gaubert*, No. 3-90-1196-D, slip op. at 7 (N.D. Tex. Sept. 4, 1990) (Fitzwater, J.); *see Am. Equitable Life Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 1989 U.S. Dist. LEXIS 16540, at *11 (N.D. Tex. Dec. 21, 1989) (Fitzwater, J.).

In deciding defendants' Rule 12(b)(6) motion, the court evaluates the sufficiency of the SEC's complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendants' Rule 12(b)(6) motion, the SEC must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 678. Furthermore, under

Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

The SEC has satisfied its obligation to plead nonconclusory facts that "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland*, 365 F.3d at 362 (quoting *Williams*, 112 F.3d at 177-78). The complaint specifically alleges that the brochures and subscription agreements, or the Offering Documents, as well as the PPMs contain the alleged misrepresentations, and that defendants created these documents to distribute to prospective investors; it specifies the time periods during which the Offering Documents and PPMs were used to promote each offering; and sets out in detail the representations or omissions allegedly made by defendants and why the representations or omissions were fraudulent.

Defendants contend that, because the complaint lumps defendants together in many of its allegations, it fails to identify the alleged speaker of the misrepresentations with sufficient particularity. The court disagrees. "Multiple defendants' conduct may be 'lumped together' if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role." *Bhatia v. Dischino*,

2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (Boyle, J.) (citing *Steiner*, 734 F. Supp. at 274). The SEC has done so here. The complaint identifies the parties separately, specifying that COG is a corporation and that Couch is COG's owner, principal, director, president, CEO and control person, and it asserts that both Couch and COG (acting through Couch) solicited the investments and created the Offering Documents and PPMs. COG is a corporation that can act only through its officers and directors. Lumping defendants' conduct together in this context is sufficiently specific to satisfy Rule 9(b).

Defendants also argue that the complaint does not satisfy Rule 9(b) because the SEC refers collectively to the 59 Well Program and the Radial Nine Program throughout much of the complaint. The court disagrees. The complaint specifically identifies each offering. And although many allegations are relevant to both offerings, when allegations apply to only one, the complaint adequately outlines to which offering the allegations apply. Rule 9(b)'s specificity requirements do not obligate a party like the SEC to engage in needlessly repetitive pleading practice when an allegation applies to both offerings. *See Steiner*, 734 F. Supp. at 273 (noting that Rule 9 does not "require[] needlessly repetitive pleading").

Regarding scienter, when the court considers the circumstantial evidence and assesses cumulatively all the pleaded evidence to determine whether, in toto, it raises an inference of scienter, it is pellucid that the complaint pleads facts that permit the court to infer that defendants engaged in conduct that was at least severely reckless.[3]

---

[3] Defendants argue that, to satisfy Rule 9(b), the SEC must plead allegations that raise a "strong inference" of scienter. The court disagrees. The "strong inference" requirement

Severely reckless conduct consists of

> highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001). The complaint alleges that defendants made statements that they knew were false when made, or made representations that were so obviously false or misleading that they had every reason to know they would potentially mislead investors. For example, the complaint alleges that defendants made projections regarding the estimated production of the programs' wells and anticipated investment returns that relied on "highly unreasonable estimates of the costs and timing associated with drilling and completing wells," and "a highly unreasonable presumption that all wells would be successful producers." Compl. ¶ 35. The complaint alleges that defendants intentionally misrepresented their experience and success with radial jet drilling technology to encourage investors to purchase interests in the Radial Nine Program, *id.* at ¶ 32; that defendants falsely stated that they would not use the services of an unlicensed broker or dealer in offering interests in the programs, when in fact they were using an unlicensed broker's services, *id.* at ¶ 24; and that defendants intentionally misled investors regarding their reasons for winding down the Radial Nine Program early, *id.* at ¶ 38. These

---

applies to actions governed by the PSLRA. *See, e.g., Fener v. Belo Corp.*, 425 F.Supp.2d 788, 795 (N.D. Tex. 2006) (Fitzwater, J.) (addressing PSLRA strong inference standard).

allegations are sufficient to raise an inference that defendants acted at least with severe recklessness.[4]

Accordingly defendants' motion to dismiss for failure to plead fraud with sufficient particularity under Rule 9(b) is denied.

IV

The court now considers defendants' motion to dismiss under Rules 12(b)(6) and 8(a).

A

Defendants contend that all of the allegations of the complaint that rely on statements made in the Offering Documents lack the level of plausibility required by Rule 8(a)(2), and that any allegations that rely on statements made in the PPMs fail to state a claim on which relief can be granted, because these statements were not made in connection with the sale of securities. The court will also consider defendants' contention that the SEC's claims must be dismissed because the PPMs demonstrate that the interests that defendants offered were interests in a joint venture, which are not securities for purposes of the Securities Act or Exchange Act.

---

[4]Defendants maintain that the SEC must rely on only one mental state. The court disagrees. Rule 8(d)(2) specifically permits parties to plead in the alternative, either in a single count or in separate ones. *See, e.g., Garret v. City of Milford*, 2004 WL 2599902, at *2 (N.D. Tex. Nov. 12, 2004) (Godbey, J.) (recognizing that "[Rule 8(d)(2)] allows parties to plead in the alternative," and therefore permits a plaintiff to allege "negligence, recklessness and knowledge in addition to intent"). Thus the SEC is permitted to allege the required mental state on more than one alternative ground without violating Rule 9(b)'s specificity requirements.

B

Defendants maintain that all of the SEC's allegations that rely on statements made in the Offering Documents lack the level of plausibility required by Rule 8(a)(2). The court disagrees. Having already concluded that the complaint meets the heightened pleading standards of Rule 9(b), the court also holds that the complaint meets the plausibility requirements of Rule 8(a)(2). When the court accepts the facts alleged in the complaint as true and construes the allegations in the light most favorable to the SEC, *see Lovick*, 378 F.3d at 437, the court holds that the complaint pleads sufficient facts to give defendants fair notice of its claims of fraud, and to permit the court to draw the reasonable inference that defendants are liable for violations of § 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10-b(5) promulgated thereunder.

C

Defendants posit that the SEC cannot rely on any allegedly false or misleading statements or omissions found in the PPMs because the complaint itself establishes that any such statements or omissions were not made in connection with the purchase or sale of securities, as required under § 17(a) of the Securities Act or § 10(b) of the Exchange Act. Defendants point to the allegation that "[d]efendants . . . created [PPMs] for the Programs, though not all investors—*and perhaps none of them*—ever received the PPMs." Compl. ¶ 20 (emphasis added). Defendants maintain that if, as the SEC alleges, the statements in the PPMs were never published to the investors, any potentially false or misleading statements therein were not made in connection with the purchase and sale of securities.

To establish violations of § 10(b) of the Exchange Act and Rule 10b-5, as well as § 17(a) of the Securities Act, the SEC is required to show that the defendant in question made a material misstatement or omission, in connection with the purchase or sale of securities, with scienter. The Supreme Court has consistently embraced an expansive reading of § 10(b) and § 17(a)'s "in connection with" requirement. *See SEC v. Wolfson*, 539 F.3d 1249, 1262 (10th Cir. 2008). To satisfy this requirement, "it is enough that the fraud alleged 'coincide' with a securities transaction." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006). "[T]he statute should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972)) (internal quotation marks omitted). To satisfy this requirement, "the SEC, unlike private litigants, need not prove the elements of reliance, proximate causation, or harm[.]" *SEC v. Gann*, 2008 WL 857633, at *9 (N.D. Tex. Mar. 31, 2008) (Lindsay, J.).

Construing the complaint in the light most favorable to the SEC, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in the SEC's favor, the court concludes that the SEC has pleaded facts sufficient to permit the court to draw the inference that the alleged misrepresentations made in the PPMs were made in connection with the purchase and sale of securities. Although the SEC acknowledges that no investors may have received the PPMs, when the court draws all reasonable inferences in the SEC's favor, it must draw the reasonable inference that some of the investors did receive the PPMs, as the complaint also alleges. The allegations that defendants created the PPMs for the purpose of

- 15 -

promoting the sale of interests in the Programs and that some investors received the PPMs are therefore sufficient to plead a plausible claim.

D

Finally, the court considers defendants' argument that the SEC's claims must be dismissed because the PPMs demonstrate that the interests offered by defendants were interests in a joint venture, which are not securities for purposes of the Securities Act or Exchange Act.[5]  The SEC counters that the complaint adequately alleges that the interests defendants sold are not interests in a joint venture, but are investment contracts, which are securities under the Securities Act and Exchange Act.

In *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), the Supreme Court defined "investment contract" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298-99; *see also Matassarin v. Lynch*, 174 F.3d 549, 560 (5th Cir. 1999).  "The Supreme Court has repeatedly emphasized that economic reality is to govern over form" when determining whether an interest is a security, "and that the definitions of the various types of securities should not hinge on exact and literal tests." *Williamson*, 645 F.2d at 418 (citing *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 558-59 (1979)).  The substance of the transaction

---

[5]Defendants relied on this as a basis for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).  As the court explains above, *see supra* § II, it treats this basis for dismissal as an attack on the merits under Rule 12(b)(6).

should govern its classification "rather than the names that may have been employed by the parties." *Matassarin*, 174 F.3d at 560 (quoting *Daniel*, 439 U.S. at 558).

Defendants cite the PPMs, which state that the programs are "joint ventures" and that investors "are provided extensive and significant management powers . . . and will be expected to exercise such powers[.]" Ds. Resp. App. 050. The complaint alleges that "the interests Defendants offered and sold . . . are securities," Compl. ¶ 17; that defendants would drill the programs' wells, *id.* at ¶ 33; and that defendants never transferred title to any interests in the wells to investors, *id.* at ¶ 22.[6] Construing the complaint in the light most favorable to the SEC, the court concludes that the SEC has pleaded sufficient facts to permit the court to draw the reasonable inference that the interests offered by defendants were investment contracts, and thus were securities for purposes of the Securities Act and Exchange Act. It is apparent that defendants have a very different view of what kind of interests were being offered in the programs. But the parties' dispute is a matter to be resolved at a later procedural stage, such as on motion for summary judgment or at trial, after further opportunity for factual development has occurred.

---

[6]In reaching its conclusion, the court has not considered the Declaration of Jessica Magee or documents attached to the declaration filed by the SEC with its response. Although such evidence can be considered when analyzing a Rule 12(b)(1) jurisdictional challenge, *see Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), "[m]otions filed under [Rule] 12(b)(6) . . . are designed to test the sufficiency of the pleadings, and courts do not consider materials outside those pleadings in deciding those motions," *Evanston Ins. Co. v. Tonmar, L.P.*, 669 F.Supp.2d 725, 730 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *In re Carmelita, Inc.*, 2009 WL 2356499, at *2 (S.D. Tex. July 29, 2009)).

Accordingly, defendants' motion to dismiss for failure to plead a plausible claim for relief or state a claim under Rule 12(b)(6) is denied.

V

The court considers last defendants' motion to dismiss the SEC's request for "obey the law injunctions." Defendants contend that such injunctions violate Rule 65(d)(1)'s specificity requirements. The SEC responds that it would be improper to dismiss a request for such injunctive relief at this stage, before determining whether defendants violated the federal securities laws.

Section 20(b) of the Securities Act and § 20(d) of the Exchange Act "authorize the [SEC] to seek and direct the courts to enter permanent restraining orders upon a 'proper showing' that the defendant 'is engaged or is about to engage' in violations of the securities laws." *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981). The Fifth Circuit has permitted the kind of injunctions that the SEC seeks in this case, once the district court determines that "past violations of the securities laws constitute[] a 'reasonable likelihood of future transgressions.'" *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 1959843, at * 9 (N.D. Tex. May 5, 2008) (Fitzwater, C.J.) (citing *Zale*, 650 F.2d at 718). The court therefore disagrees with defendants' contention that such injunctions violate Rule 65(d)(1), and concludes that the SEC's request for injunctive relief should not be dismissed based only on the allegations of the complaint.

Accordingly, the court denies defendants' motion to dismiss the SEC's request for injunctive relief.

\*   \*   \*

For the reasons explained, defendants' motion to dismiss under Rules 12(b)(1), 12(b)(6), 9(b), and 65(d)(1) is denied.

**SO ORDERED.**

December 31, 2014.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE